## Smith v. Richey, et al.

(Decided October 28, 1919.)

### Appeal from Barren Circuit Court.

1.  Homestead—Right of Widow—Homestead Act, When Effective. —Where a husband died after the homestead law became effective, and was himself entitled to a homestead, the fact that he and his wife were married and the property was acquired before the act became effective did not affect the widow's right of homestead since the purpose of the act was not to interfere with any existing rights, but to confer a right that did not theretofore exist.

2.  Homestead—Dower—Election.—Where neither dower nor homestead was assigned, but the widow continued to occupy the whole

of her husband's land, which was worth less than $1,000.00, until her death which occurred forty-seven' years after her husband's death, such occupancy will be treated as an election by her to hold the land as a homestead.

3. Adverse Possession—Death of Husband—Possession by Widow.— Occupancy by a widow of her husband's land as a homestead is amicable to her husband's children, and is not rendered adverse by the mere fact that she referred to the land as her own or sold trees from the land.

4. Life Estates—Occupant of Homestead—Improvements—Charge on Remaindermen—Estoppel.—The relation of a widow occupying her deceased husband's land as a homestead is the same as that of a life tenant, and notwithstanding an honest belief of ownership of the fee, neither she nor a son, to whom she contracted to give the property in consideration of his agreement to take care of her until her death, is entitled to a lien as against the remaindermen for enhancement of the property by improvements; and something more than mere knowledge on the part of the remaindermen that the improvements were being made, and passive acquiescence therein, is necessary in order to charge them with the cost thereof.

5. Appeal and Error—Pleading—Rejection of Pleading—Improvements.—In an action for the sale of land for indivisibility, it was not error to reject a second amended answer and counterclaim asserting against the remaindermen a claim for improvements made under an alleged contract with the life tenant, and tendered by the defendant after all the evidence had been heard, for the purpose of conforming the pleadings to the proof, where certain allegations of the pleadings did not conform to the proof and the other allegations were not sufficient to charge the remaindermen with the cost of the improvements.

BAIRD & RICHARDSON for appellant.

T. W. & R. C. P. THOMAS and W. L. PORTER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Thomas F. Smith and his wife, Elizabeth, were married prior to the year 1860. Thomas died intestate in the year 1869. He was the owner of a farm in Barren county of less value than $1,000.00. He was survived by his widow, Elizabeth, and eleven children. A daughter, Elizabeth, died in infancy and her interest passed to her brothers and sisters. Thereafter a son, George, died at the age of twenty-six, and his interest in the land passed to his mother, Elizabeth. From the time of her husband's death until her death in the month of November, 1916, the widow occupied the farm.

She left a will by which she devised all of her estate to her son, H. C. Smith.

Upon the death of the widow, Elizabeth Richey and others, children of Thomas Smith, brought this suit against H. C. Smith and others, children and grandchildren of the intestate, for a sale of the land and a division of the proceeds. On November 15, 1916, the defendant, H. C. Smith filed an answer and counterclaim denying that the plaintiffs and defendants were the owners of fifty acres of the land in controversy, and pleading in substance that his mother, Elizabeth Smith, was the owner thereof by adverse possession, and that said tract passed to him under the will of his mother. On March 12, 1917, H. C. Smith filed an amended answer and counterclaim asserting that even if the fifty acres belonged to his father at the time of his death, one-tenth of the interest of his sister Elizabeth passed to him upon her death, and that upon the death of his mother one-tenth of the interest of his brother George also passed to him. On July 7, 1917, H. C. Smith tendered a second amended answer and counterclaim in which he set up a claim for improvements. The court declined to permit this pleading to be filed. On final hearing, H. C. Smith's claim that he was the owner of all the land was rejected, but in addition to his interest as heir at law of his father, he was adjudged an interest in the land as heir at law of his sister Elizabeth, and another interest in the land as a devisee of his mother, who inherited the interest of his deceased brother, George Smith. It was further adjudged that the land could not be divided without impairing its value, and that it be sold for the purpose of dividing the proceeds among the parties to the action. H. C. Smith appeals.

There is no merit in the contention that the widow and her children were not entitled to a homestead in the land in question because her husband acquired the property and their marriage took place prior to June 1, 1866, when the homestead law went into effect. No question of debts incurred prior to the passage of the act is presented. The whole theory of the law with relation to homestead is based upon the idea that as a matter of public policy, for the promotion of the prosperity of the state, and to render independent and above want each citizen of the government, it is proper he should have a home where his family may be sheltered, and live be-

yond the reach of financial misfortune, and the demands of creditors who have given credit under such law. 13 R. C. L. sec. 5, p. 543; Commonwealth v. Day, 12 Bush, 283, 23 Am. Rep. 718. It was not the purpose of the law to interfere with any existing property rights. Its purpose was to confer a right that did not theretofore exist. The law was in force when the husband died. The effect of the law was to give a right of homestead to the husband as the head of the family, and upon his death the homestead continued for the benefit of his widow and infant children. Neither dower nor homestead was assigned.

The widow continued to occupy the whole of the land, which was worth less than $1,000.00, until her death which occurred forty-seven years after her husband's death. Such occupancy will be treated as an election by her to hold the land as a homestead. James, et al. v. Reeves, et al., 185 Ky. 406; Campbell v. Whisman, 183 Ky. 256, 209 S. W. 27. Under these circumstances, her occupancy was amicable to her husband's children, and was not rendered adverse by the mere fact that she referred to the land as her own, or sold certain trees from the land. Bates v. Adams, 182 Ky. 100, 206 S. W. 163; May v. C. & O. Ry. Co., 184 Ky. 493; Bush v. Fitzgerald, 125 S. W. 716. That being true, the widow did not acquire title by adverse possession to the fifty acres in controversy, and no title passed to H. C. Smith by virtue of her will.

But it is insisted that the court erred in not permitting the second amended answer and counterclaim to be filed. After the evidence had already been taken, this pleading was offered for the purpose of conforming to the proof. It was alleged in substance that the defendant, H. C. Smith, moved to the lands of his mother about nineteen years before her death under a contract by which she agreed that, if he would care for her during the remainder of her life, she would give him the place for his services; that plaintiffs knew of the contract he had with his mother, and with such knowledge stood by and permitted him to spend his time and money in improving the land, cleaning it up, building new fences, barns and outhouses, and repairing the residence; that they made no complaint and offered no objection to his living upon said place with his mother under said contract, and that they were estopped to recover any part of the land until they compensated him for the enhanced

value of the land caused by said improvements. As a matter of fact, however, there was very little, if any, proof of the contract which defendant claimed to have had with his mother, and certainly no proof that any of the other children ever knew anything about it. That being true, the allegation referred to did not conform to the proof. Indeed the only allegation which did conform to the proof was the mere statement that the improvements were made with the knowledge and acquiescence of the other heirs. The widow's relation to the property was that of a life tenant, and as such, even though she believed that she owned the fee, she was not entitled to a lien as against the remaindermen for the enhancement of the property by reason of her improvements, and the defendant, who made the improvements under a contract by which she agreed to give him the land if he would take care of her during the rest of her life, was entitled to no greater rights than the life tenant herself; Scott v. Scott, 183 Ky. 604, 210 S. W. 175; Frederick v. Frederick's Admr., 102 S. W. 858, 13 L. R. A. (N. S.) 514; and something more than mere knowledge on the part of the remaindermen that the improvements were being made and passive acquiescence therein was necessary in order to charge them with the cost thereof. 17 R. C. L. sec. 25, p. 636; Porter v. Osmun, 3 Ann. Cases, 687, and note.

Since the allegation that the other children knew of defendant's contract with his mother did not conform to the proof, and since the only allegations that did conform to the proof were not sufficient to charge the remaindermen with the cost of the improvements, the trial court did not err in refusing to permit the second amended answer and counterclaim to be filed.

Judgment affirmed.