## Easter v. Johnson.

(Decided January 18, 1927.)

## Appeal from Estill Circuit Court.

1. Principal and Agent—Power of Attorney to Sell, Lease or Mortgage Interest in Land Held to Authorize Deed.—Power of attorney given by son to mother, to sell, lease or mortgage his interest in land, "same as myself," was not exhausted by mortgage on land, but authorized mother to execute deed on default of mortgage.

2. Contracts—Construction Different from that Placed on Writings by Parties at Time of Execution will Not be Given Writings.—Writings will not be given different construction from that placed on them by parties at time of their execution.

3. Principal and Agent—Conduct of Son After Executing Power of Attorney to Mother to Sell, Lease or Mortgage Interest in Land Showed Intention to Grant Power to Convey on Default in Mortgage.—Conduct of son, after giving mother power of attorney to sell, lease or mortgage his interest in land, in making no inquiry about title or mortgage, and asserting no claim to land for 11 years after death of mother, showed intention to grant power to convey land on default in mortgage.

JOHN NOLAND for appellant.

RIDDELL & SHUMATE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Dyson Easter died a resident of Estill county about the year 1879, leaving surviving him his widow, Ailsy Easter, and five children. He owned about 400 acres of land; after his death about 120 acres were set apart as the dower of the widow and the remainder of the land was divided between the five children. Before his death the father had signed the bond of his son, James Easter, as guardian of a child. An action was brought on this bond against James Easter, his mother and the other children. After a prolonged litigation, judgment was recovered against them for $745.96. There was no way to pay the

debt as the estate had been divided, so the mother and the children made a mortgage upon the dower tract and upon this mortgage borrowed the money to pay the judgment. Jesse B. Easter, one of the sons, did not sign the mortgage in person, but his name was put to it by his mother under a power of attorney. The mortgage ran along for many years and finally in 1901 the mother and the children conveyed the land to the mortgagee in satisfaction of the mortgage. The mother moved off the land and gave the grantee possession. This deed is now lost, but its execution is clearly established. Jesse B. Easter did not sign it in person; it was signed for him by his mother under the power of attorney given in 1886. The mother died in 1910. In 1921 Jesse B. Easter asserted claim to one-fiftth of the tract of land, which in the meantime had been conveyed from one person to another until it had changed hands four or five times. That action was dismissed upon a technicality and then he brought this action on September 1, 1923, to recover the land. On final hearing the circuit court dismissed the action. He appeals.

The defendants, and those under whom they claimed, have been in adverse possession of the land since 1901, or for more than twenty years before the action was brought. But the mother, who was the life tenant, did not die until 1910 and fifteen years had not elapsed since then before the bringing of the suit. The question therefore presented by the record is this: Was the deed executed by the mother in 1901 in the name of and for J. B. Easter under the power of attorney valid as to J. B. Easter? The power of attorney under which the deed was executed is in these words:

"Nevada, Mo., Sept. 25, 1886. Know all men by these present, that I, J. B. Easter, of the county of Vernon and state of Missouri, do hereby appoint Alicy Easter of the county of Estill and state of Kentucky, my agent, granting full power of attorney to sell, lease or mortgage my interest in the landed estate of the late J. D. Easter, all interest in the dower of Ailcy Easter, his wife, to convey the same as same as myself.

"Witness my hand this 25th day of Sept., 1886.
"(Signed) J. B. EASTER."

It is earnestly insisted that this power of attorney was exhausted when the mother executed the mortgage and that she had no authority later to execute a deed for the land when the mortgage was not paid. The case of Marquam v. Ray, 131 Pac. 523, is relied on as sustaining this rule. But the power of attorney in that case conferred only this authority:

"For me and in my name and for my use and benefit to sell and convey, or if unable to sell to mortgage said property for the purpose of raising money thereon."

It was held that the money having been raised by a mortgage the power was exhausted. But that is not this case. In this case the mother is given a full power of attorney to sell Jesse B. Easter's interest in the dower of Ailcy Easter, and "to convey the same as same as myself." There is nothing in this paper about raising money or to show that the power was exhausted when the money was raised. On the other hand the mother was given the same power to convey as the plaintiff had. All the parties at the time placed this construction upon the paper, including the plaintiff. He came to see his mother from time to time; he never made any inquiry about the title or the mortgage; he never set up any claim to the land, although his mother died eleven years before any suit was brought and he knew of her death at the time. He asserted no claim to the land then, nor until the grantee in the deed, the lawyer who prepared it and many others who knew of the transaction, were dead. In the meantime the land had passed into the hands of innocent persons. It is the universal rule in the construction of writings not to give them a different construction from that placed on them by the parties at the time of their execution. Jesse B. Easter's subsequent conduct clearly shows that he intended by this power of attorney to vest in his mother the power to convey the land, and that his present claim was conceived after valuable oil wells were put down in the vicinity and land values had risen.

Judgment affirmed.