## Jones v. Riddell.

(Decided March 20, 1928.)

### Appeal from Whitley Circuit Court.

1. Contracts.—In interpreting contracts, intention of parties must be ascertained and given effect, and intention is to be ascertained from words employed, taking into consideration whole context of agreement.

2. Evidence.—Where written contract by its terms is ambiguous or uncertain in its meaning, any ambiguity therein may be explained by introduction of parol testimony.

3. Evidence.—Under Ky. Stats., sec. 472, providing that consideration of any contract in writing may be impeached, it is competent to prove by parol testimony a different consideration from that expressed in writing.

4. Evidence.—Lease of drug store room providing that "in consideration of $1,050, payable monthly at rate of $87.50 per month," plaintiff leased to defendant "corner storeroom of building owned jointly by S. and J., and now occupied by S. as drug store," and providing that "when room on First street . . . becomes vacant, . . . it shall come under lease and be part thereof, but said second party shall pay said first party monthly rental of $87.50," held sufficiently ambiguous and uncertain, regarding whether $87.50 rent included both rooms, to authorize court to hear parol evidence to ascertain parties' intent.

5. Landlord and Tenant.—Evidence held sufficient to support finding that $87.50 rent stated in lease of drug store room was not intended to apply where another room used as barber shop did not become vacant, but that rent for drug store room was to be $62.50 per month.

6. Appeal and Error.—In action to recover unpaid rent, finding of jury regarding whether parties intended that rent stated was intended to apply only if another room became vacant was merely advisory and chancellor was not bound by it, so that irregularity in submitting issues to jury without any motion having been made by either party and without notice to parties and in absence of plaintiff's attorneys was harmless.

WM. LEWIS & SON and JOHN B. WALL for appellant.

STEPHENS & STEELY far appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

At the time the contract was entered into out of which this litigation arose, appellant owned an undivided one-half interest in a building located on the main business street in Corbin, Ky. G. M. Smith owned the remaining undivided one-half interest. In August, 1920, appellant and Smith, by separate written contracts, leased a portion of the building owned by them to the appellee, D. R. Riddell, for a period of 10 years beginning on the 1st day of September, 1920, with the privilege of extending the lease for a period of 5 years. In the contract signed by appellant and appellee it was provided that, "In consideration of a yearly rental of $1,050 payable monthly at the rate of $87.50 per month, on and after the 1st day of September, 1920," the appellant leased to the appellee "the corner store room of the building owned jointly by said G. M. Smith and J. W. Jones and now occupied by G. M. Smith as a drug store." Further along in the contract it was provided that, "When the room on First street at the back of the room herein leased, now occupied by L. R. Reams as a barber shop, becomes vacant by said Reams, it shall come under this lease and be a part hereof, but said second party shall pay said first party a monthly rental of $87.50." The contract was typewritten with blank spaces for the amounts which were filled in by appellant with pen and ink.

It is appellee's contention that it was agreed the entire rental for the two rooms should amount to $87.50 per month, being $62.50 per month for the drug store room and $25 for the barber shop, and that $87.50 was inserted in the contract upon the assurance of appellant that L. R. Reams would vacate the room occupied by him as a barber shop within 10 days, and that it was agreed that in the event appellee was not placed in possession of the barber shop the rent due from him should be $62.50 per month.

It is appellant's contention that the rental agreed upon was $87.50 per month for the drug store room and $37.50 per month for the barber shop, and that by mistake he inserted $87.50 instead of $37.50 in the second clause of the contract above quoted.

At the end of the first month appellee tendered to appellant $62.50, which the appellant declined to accept. Appellee had not at that time, nor has he since been,

placed in the possession of the barber shop. He continued from time to time to tender rental to appellant at the rate of $62.50 per month, which appellant declined to accept.

On June 7, 1922, appellant instituted this action against appellee seeking to recover the sum of $1,750 for unpaid rent, alleging, in substance, that he had rented to the appellee a certain drug store room at the agreed price of $1,050 annual rental to be paid at the rate of $87.50 per month, and that no part of the rent had been paid. From time to time he filed amended petitions setting up the accrued or additional rental. The appellee offered to confess judgment for the amount due at that time at the rate of $62.50 per month. Appellant was granted judgment for $3,062.50, rental up to October 1, 1924, at $62.50 per month, without interest, the court reserving the question of interest and also reserving for final adjudication the question in dispute as to whether the monthly rentals should be $87.50 or $62.50. The action by agreement was then transferred to the equity side of the docket, depositions taken, and the case submitted.

After the case had been submitted, the court on its own motion impaneled a jury and submitted to it the following questions:

"(1)  Please find from the evidence what amount the parties to the contract intended, at the time the contract was executed, that Riddell was to pay for the drug store room.

"(2)  Find from the evidence what the figures $87.50 were to pay for.

"(3)  Find from the evidence and state in your verdict whether it was the intention of the parties that the barber shop should, for sure, pass to Riddell and his associates under this lease."

The depositions were then read to the jury and they returned the following answers:   To question No. 1, "$62.50"; to question No. 2, "two rooms"; to question No. 3, "Yes."

The court found that the contract was ambiguous, and it was the intention of the parties at the time it was entered into that appellee was to pay $62.50 per month for the drug store room and $87.50 for both the drug store and barber shop rooms, when the barber shop was vacated and appellee placed in possession thereof. It further found that appellee had never been placed in pos-

session of the barber shop, and that he had paid the amount of $62.50 per month. Judgment was entered dismissing plaintiff's petition.

On this appeal appellant insists that the judgment should be reversed because the chancellor erred in impaneling the jury and submitting to it an issue out of chancery when no motion to that end had been made by either party; that he erred in holding that the contract was ambiguous; and that the judgment is not sustained by the evidence.

The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention. The intention of the parties is to be ascertained from the words employed taking into consideration the whole context of the agreement. A well-settled rule in the construction of a written contract is that its terms may not be contradicted or varied by parol evidence. However, where a written contract by its terms is ambiguous or uncertain in its meaning, any ambiguity therein may be explained by the introduction of parol testimony. Westinghouse Electric & Mfg. Co. v. Greenville Coal Co., 169 Ky. 280, 183 S. W. 901. Furthermore, under section 472, Kentucky Statutes, the consideration of any contract in writing may be impeached, and it is competent to prove by parol testimony a different consideration from that expressed in the writing. Steele v. Hinkle, 205 Ky. 408, 265 S. W. 931; Huff v. Fuller, 197 Ky. 119, 246 S. W. 149.

From a careful reading of the contract in question it is uncertain whether the parties thereto intended that the rental for the two rooms should be at the rate of $87.50 per month or that the rental for the drug store should be at the rate of $87.50 per month and of the room occupied as a barber shop at the rate of $87.50 per month in addition when vacated by Reams. Only three persons were present when the contract was consummated, the appellant, appellee, and G. H. Southerland, who at the time was a partner of appellee. Appellant testified that the rental agreed upon was $87.50 per month for the drug store room and $37.50 per month for the room then occupied by Reams. He admits that by mistake he inserted in the contract $87.50 instead of $37.50 as the rental for the latter room. Appellee and Southerland testified that the rental agreed upon for the two rooms was $87.50 per month, and, in the event appellee was not placed in possession of the room then occupied by Reams, the rental

for the drug store room was to be at the rate of $62.50 per month.

At approximately the same time appellee leased from G. M. Smith his undivided one-half interest in the two rooms at the agreed rental of $50 per month, the rental for the drug store room to be at the rate of $37.50 per month in the event appellee was not placed in possession of the other room. Appellant claims that the rental accepted by Smith for his undivided one-half interest in the property was part of the consideration for the sale by him to the appellee of the drug business that was then being .conducted in the building by Smith.

Smith died before the case was submitted and his deposition was never taken.

The contract was sufficiently ambiguous and uncertain to authorize the court to hear parol evidence in order to ascertain the real intent of the contracting parties, and the preponderance of the evidence supports the finding of the chancellor.

The act of the court in impaneling a jury after the case had been submitted and submitting to it the issues in question without any motion having been made by either party that such issues be submitted to a jury, and without notice to the parties and in the absence of appellant's attorneys, was irregular, but the finding of the jury was merely advisory and the chancellor was not bound by it, and we cannot assume that his judgment was other than it would have been had there been no interposition of a jury.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.